THOMPSON, Presiding Judge.
D.B. (“the mother”) appeals from the judgments of the Coffee Juvenile Court in two separate cases: one involved her daughter, R.C. (“the daughter”), and the other involved her son, S.C. (“the son”) *1241 (the son and the daughter are collectively referred to herein as “the children”). In those judgments, the juvenile court ordered that custody of the children remain with the Coffee County Department of Human Resources (“DHR”). This court consolidated the mother’s appeals. For the reasons stated herein, we reverse and remand.
The mother was previously married to B.C. (“the father”), although the record is not clear as to where they lived during the marriage. The daughter was born in 1993, and the son was born in 1996. Following the birth of the children, the mother and the father divorced. The record does not indicate where the parents were divorced. The mother thereafter married W.B. (“the stepfather”), and the children lived with W.B. and her. During part of their marriage, the mother and the stepfather lived in Florida.
From documents appearing in the record, it appears that on August 30, 2004, while the mother and the stepfather were living in Florida, the Circuit Court of the Fifth Judicial Circuit in and for Marion County, Florida (“the Florida court”), entered an order adjudicating the children dependent. As a basis for its finding of dependency, the Florida court found that the children had “been exposed to very bad living conditions with the mother and the stepfather,” that the mother and the stepfather were “not responsive to concerns about [the sonj’s seizures,” that the son suffered “very extensive bruising” resulting from either “inadequate supervision or excessive corporal punishment,” and that “[tjhe mother evidence[d] poor recall, little understanding of the significance of [the sonj’s problems, and probably [the daughter’s as well.” The Florida court concluded that “[tjhe mother’s own intellectual impairment or other mental problems put these two special needs children at substantial risk of imminent abuse or neglect.” As part of its order finding the children dependent, the Florida court ordered that the children were to remain in the mother’s custody under the supervision of the Florida Department of Children and Families. The Florida court assigned case number 2004-264-DP to its proceeding.
In addition to the Florida court’s August 30, 2004, dependency adjudication, the record contains a report, dated April 27, 2005, of a magistrate appointed by the Florida court (see Rule 8.257, Fla. R. Juv. P.) to conduct a judicial-review hearing in the dependency case. Among other things, the magistrate found that the children continued to be dependent, and she recommended that the children continue in the custody of the mother; that the mother and the father, who also lived in Florida, be required to agree on a visitation schedule, failing which a standard visitation schedule should be entered; and that the Florida court retain jurisdiction over the case. There are no documents in the record indicating whether the Florida court accepted the magistrate’s recommendations or how it ultimately resolved the dependency ease.
Sometime later, the mother and the stepfather moved with the children to Alabama. On April 17, 2007, DHR filed two dependency petitions, one as to each of the children, in the Coffee Juvenile Court (“the juvenile court”). DHR alleged in the petitions that the son suffered from diabetes, that the mother and the stepfather were neglecting his medical needs, and that the mother and the stepfather were relying on the daughter to care for the son. DHR also alleged that the mother and the stepfather had refused to cooperate with DHR on two prior occasions. DHR sought custody of both children. Upon consideration of DHR’s petitions, the *1242 juvenile court ordered that the children be taken into protective custody. On April 20, 2007, the juvenile court entered an order transferring custody of both children to DHR and indicating that reasonable efforts would be made to reunite the children with the mother.
On May 28, 2007, DHR received allegations that the stepfather had sexually abused the daughter. After an investigation by law enforcement, the stepfather was arrested and charged with three counts of sexual abuse of the daughter. He subsequently fled the jurisdiction. Following his arrest, the mother decided to sever all ties with the stepfather and to pursue a divorce against him.
On August 13, 2007, the juvenile court entered an order as to each child, based on a stipulation of facts, adjudicating the children dependent and indicating that reasonable efforts would continue to be made to reunite the children with the mother and to restore custody of the children to her. According to the orders, custody was to remain with DHR.
On January 3, 2008, DHR filed a motion in both cases in which it sought to have the juvenile court “establish jurisdiction ... [in] the Courts in Coffee County, Alabama from the [Florida court] in Juvenile Division case number 2004-264-DP .... ” On February 26, 2008, DHR filed a motion to set a hearing on its motion regarding jurisdiction. On March 7, 2008, the juvenile court denied the motion for a hearing and ordered DHR to inform it of any action pending in Marion County, Florida, concerning custody of the children and to provide contact information for the Florida court so that it could “communicate [with] the Court in Marion County, Florida, and set any hearing pursuant to the Uniform Child Custody Jurisdiction [and Enforcement] Act[, § 30-3B-101 et seq., Ala.Code 1975].” On March 12, 2008, in compliance with the March 7, 2008, order, DHR submitted certain documents from the dependency action in the Florida court to the juvenile court, including documents con-, taining the information described above! On March 17, 2008, the juvenile court denied DHR’s motion to determine jurisdiction. The juvenile court’s order in the case involving the daughter read:
“There is nothing in [DHR]’s motion that would indicate the Florida Department of Human Resources is or has assumed jurisdiction in this matter. Although the Florida Department of Human Resources previously adjudged the minor child to be dependent and placed her under protective supervision in July 2005, there is nothing provided or plead [sic] to make the Court aware of any pending proceeding or any other motions currently before the [Florida court],
“If there is any motion, pleading, correspondence or Order from the [Florida court], or from any of the attorneys in Marion County, Florida, who state that Marion County is asserting jurisdiction in this case since the filing of the dependency in this Court, [DHR] shall provide this to the Court.
“By finding the minor child dependent in July 2007, as she was a resident of Coffee County and/or was present at the time of the filing of the dependency, this court assumed jurisdiction. There is nothing provided to the Court at this time that would indicate the [Florida court] had jurisdiction over this minor child, at the time of the filing of the dependency by [DHR], nor is there anything provided to this Court indicating that Marion County is attempting to assume jurisdiction over this child.”
The juvenile court entered a virtually identical order in the case involving the son.
*1243 On May 13, 2008, DHR filed a motion for a permanency hearing in each of the cases before the juvenile court, in which it indicated that the holding of such a hearing was overdue and should have been scheduled in April 2008. On July 9, 2008, the juvenile court held a permanency hearing in both cases. Following the hearing, the juvenile court entered orders in both cases in which it found, among other things, that placement of the children in the mother’s home continued to be contrary to the children’s best interest and welfare but that termination of parental rights would not be beneficial to them either. The juvenile court ordered that custody remain with DHR, and it set the case for a dispositional review in January 2009. The mother filed a timely appeal to the circuit court in both cases. Thereafter, the juvenile court determined that there was an adequate record and that appeal would lie with this court. The mother then filed a notice of appeal to this court as to each case. This court has consolidated the mother’s appeals.
On appeal, the mother contends that the evidence did not support the juvenile court’s judgments continuing custody of the children with DHR. We do not reach the merits of that contention, however, because it is not clear from the record that the juvenile court obtained subject-matter jurisdiction in these matters. Although neither party takes issue with the juvenile court’s exercise of jurisdiction in these cases, we are bound to consider questions of subject-matter jurisdiction ex mero motu, and we review such questions de novo. M.B.L. v. G.G.L., 1 So.3d 1048, 1050 (Ala.Civ.App.2008). For the reasons discussed below, our review of the record leads us to conclude that, under Alabama’s version of the Uniform Child Custody Jurisdiction and Enforcement Act, § 30-3B-101 et seq., Ala.Code 1975 (“the UC-CJEA”), subject-matter jurisdiction over the matters raised in these cases may rest in the Florida court and not in the courts of Alabama.[1] See M.B.L., 1 So.3d at 1051 (“[I]n the context of a custody matter controlled by the UCCJEA, ‘jurisdiction to make a child custody determination is subject matter jurisdiction ’ ....”).
“The UCCJEA addresses jurisdiction in matters that may be classified within the definition of a ‘child custody proceeding,’ including dependency proceedings in which the issue of a child’s custody may arise.” M.B.L., 1 So.3d at 1050. According to the UCCJEA, a “child custody proceeding” is “[a] proceeding in a court in which legal custody, physical custody, or visitation with respect to a child is an issue.” § 30-3B-102(4). The term includes, among other things, “a proceeding for ... dependency ..., in which the issue [of custody or visitation] may appear.” Id. According to the UCCJEA, a “child custody determination” is “[a] judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child.” § 30-3B-102(3).
An Alabama court may not enter a child-custody determination following a previous child-custody determination by a court of another state concerning the same child unless the Alabama court has jurisdiction to make an initial child-custody determination[2] and either: (1) the court of *1244 the other state determines that it no longer has continuing, exclusive jurisdiction[3] over the matter or that a court of this state would be a more convenient forum or (2) the court of this state or the court of the other state determines that, among other individuals, the child and the child’s parents no longer reside in the other state.[4] § 30-3B-203; § 30-3B-102(ll) (defining “modification”).
*1245 Applying the foregoing provisions of the UCCJEA to the present appeals, it is clear that both the dependency proceeding in the Florida court and the proceedings before the juvenile court in the present cases constitute “child custody proceedings,” because custody of the children is an issue in all of them. Moreover, the Florida court’s August 30, 2004, dependency adjudication and the juvenile court’s judgments of July 21, 2008, constituted “child custody determinations” because all of them provided for custody of the children.
The record provides no indication that the Florida court has determined that it no longer has continuing, exclusive jurisdiction over the matter of the children’s custody or that a court of this state would be a more convenient forum. Furthermore, the record reflects that the children’s father continues to reside in Florida. Thus, the record lacks any evidence demonstrating that the juvenile court properly entertained jurisdiction in these cases to enter what, in effect, constituted a modification of the Florida court’s previous determination.
The record is not conclusive with regard to the question of jurisdiction. The record does not indicate, for example, what jurisdiction divorced the mother and the father and determined the initial custody arrangement of the children. Thus, the record does not foreclose the possibility that the courts of Alabama do have jurisdiction over the issue of the children’s custody and that the court of Florida never properly gained jurisdiction over that issue. We are simply not presented with sufficient evidence to enable us to determine whether jurisdiction was proper in the juvenile court in this case.
In M.J.P. v. K.H., 923 So.2d 1114 (Ala.Civ.App.2005), this court confronted a question of jurisdiction under the UC-CJEA. In that case, a juvenile court of this state dismissed certain dependency petitions and an action to modify a dependency judgment, apparently. on the basis that it lacked jurisdiction under Alabama’s version of the UCCJEA to entertain those matters. On appeal, this court determined that there was insufficient evidence in the record to determine the question of jurisdiction under the UCCJEA. As a result, the court reversed the juvenile court’s judgment of dismissal and remanded the cause for the juvenile court “to take the necessary evidence, determine the necessary facts, and apply the ... UCCJEA to those facts.” 923 So.2d at 1117.
Because the record in the present case contains some indication that the juvenile court may have been without jurisdiction to enter its judgments related to the custody of the children, but does not provide sufficient information to fully resolve that question, we must, as we did in reverse the juvenile court’s judgments, which are based on an assumption of jurisdiction. On remand the juvenile court, before entering a new judgment, is directed to take evidence on the question of its *1246 jurisdiction under the UCCJEA and to determine whatever facts are necessary to a disposition of that question. In carrying out this direction, the juvenile court should consider the various tools provided by the UCCJEA for resolving questions of jurisdiction, including communicating with the Florida court (see § 30-3B-110) and obtaining records from the Florida court regarding any child-custody proceedings that it has conducted relative to the children (see Fla. Stat. § 61.513(4); see generally § 30-3B-112, Ala.Code 1975).
REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN, THOMAS, and MOORE, JJ., concur.
BRYAN, J., concurs specially.

. Florida has also enacted the UCCJEA. See Fla. Stat. § 61.501 etseq.

. With regard to the jurisdiction of a court of this state to enter an initial child-custody determination (i.e., ''[t]he first child custody determination concerning a particular child,” § 30-3B-l 02(8)), § 30-3B-201 provides:
"(a) Except as otherwise provided in Section 30-3B-204, a court of this state has *1244 jurisdiction to make an initial child custody determination only if:
"(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
"(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 30-3B-207 or 30-3B-208, and:
“a. The child and the child’s parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
“b. Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;
"(3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 30-3B-207 or 30-3B-208; or
"(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3).
“(b) Subsection (a) is the exclusive jurisdictional basis for making a child custody determination by a court of this state.
"(c) Physical presence of a child is not necessary or sufficient to make a child custody determination.”

. The UCCJEA provides that once a court has entered an initial child-custody determination consistent with § 30-3B-201, that court maintains continuing, exclusive jurisdiction over that determination, subject to divestiture of its jurisdiction under certain circumstances. § 30-3B-202.

. The one exception to the inability of a court to exercise jurisdiction when these prerequisites are not met is when a court exercises "emergency jurisdiction” under the UCCJEA. Section 30-3B-204 sets forth the basis for a court's emergency jurisdiction and the manner in which that jurisdiction must be exercised:
"(a) A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.
“(b) If there is no previous child custody determination that is entitled to be enforced under this chapter and a child custody proceeding has not been commenced in a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.
“(c) If there is a previous child custody determination that is entitled to be enforced under this chapter, or a child custody proceeding has been commenced in a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under Sections 30-3B-201 through 30-3B-203. The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires.
“(d) A court of this state which has been asked to make a child custody determina *1245 tion under this section, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, shall immediately communicate with the other court. A court of this state which is exercising jurisdiction pursuant to Sections 30-3B-201 through 30-3B-203, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of another state under a statute similar to this section shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order.”